(60 South. 632.)

No. 19,106.

RAILROAD LANDS CO. v. KANSAS CITY, S. & G. RY. CO.

(Jan. 6, 1913.)

*(Syllabus by Editorial Staff.)*

ADVERSE POSSESSION (§ 114*) — EVIDENCE — SUFFICIENCY.

In an action involving the right of a railroad company to possession of land which had been dedicated as a public street by a party in possession, evidence *held* to show that such party had been in possession, claiming title to the land in dispute in good faith and believing that it was covered by his deed, for more than 10 years prior to the dedication.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682–690; Dec. Dig. § 114.*]

Appeal from First Judicial District Court, Parish of Caddo; Edgar W. Sutherlin, Judge.

Action by the Railroad Lands Company against the Kansas City, Shreveport & Gulf Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Wise, Randolph & Rendall, of Shreveport, for appellant. Alexander & Wilkinson, of Shreveport, for appellee.

PROVOSTY, J. In 1856, the Vicksburg, Shreveport & Pacific Railroad Company, the author in title of the plaintiff company, acquired by grant from the United States government a tract of land figuring on the maps of the United States surveys as Silver Lake, now within the corporate limits of the city of Shreveport. This tract was of irregular shape; it not having been surveyed by the usual rectangular lines, but by a traverse line, as is customary around lakes. It was more or less water covered at the time of the survey, in 1838, and continued in that condition until recently, but between the water and the traverse line there was high land. In fact, the part of it involved in this suit is spoken of by one of the witnesses as a hill. It is the northeast edge of the tract, the part which would be occupied by Commerce street if that street were prolonged. The defendant company, some years ago, by permission of the authorities of the city of Shreveport, laid a main track and several side tracks upon this supposed prolongation of Commerce street, and the plaintiff has now brought the present suit to oust the defendant company. The suit, as originally brought, was for the land itself occupied by the tracks; but in the progress of the litigation the plaintiff company became convinced that the defendant company was in any event entitled to retain the land, upon paying the value of it, as being needed for the operation of its railroad, a public carrier, and is therefore now demanding only the value of the land. But inasmuch as the tracks are now to remain upon the land, plaintiff demands that the defendant company pay also the value of the space between the tracks, on the theory that this space is so hemmed in or corralled by the tracks as to be valueless except for such purposes as the railroad might perhaps put it to.

Defendant answers that it laid its said tracks under a franchise from the city of Shreveport, who had acquired by dedication from the owner, who, in turn, acquired by the prescription of 10 years. Further answering, defendant pleads the prescriptions of one year, applicable to actions in tort; of two years applicable to actions in damages resulting from the expropriation of property; of ten years, applicable to all personal actions; and of ten years acquirendi causa. In the brief, though not specially in the pleadings, defendant urges the further defense that the said tracks were laid before plaintiff acquired title, and that any right of action the former owner might have had for the value of the land in question has never been transferred to plaintiff.

Of these defenses we will consider only that of the prescription of ten years acquir-

endi causa, as it is first in order, and as we find that it is well founded and ends the controversy.

On December 27, 1844, Rowland Jones purchased from Bushrod Jenkins by the following description:

"All that lot and parcel of ground in the town of Shreveport, known on the plat of said town made by George Morse as block 67, containing eleven acres, more or less, said block having for its boundary on three sides Silver Lake and on the fourth side blocks 5, 46 and 63 in said town."

This included the area in dispute, if the said block 67 extended to the water's edge, and not merely to the traverse line of the lake. The map referred to would have determined that point, but it is not in evidence. The next best evidence would have been the extent of the possession taken by Rowland Jones at the time of the purchase. This would have shown how the act was understood; at least, by him. But this evidence, too, is lacking, since the memory of the witnesses can go no further back than 1850, some six years after the purchase. The witnesses say that Rowland Jones was then in possession under fence to the water's edge; and that he continued his said possession until he caused the area to be laid out into squares, lots, and streets and dedicated the streets to the public; and that this Commerce street, although never improved, has been open as a street ever since. The date of this dedication is shown by the records to have been 1869, when the plat of the survey was made and recorded.

The natural inference is that this possession which Rowland Jones is thus found to have had so soon after his purchase is the same that he took at the time of his purchase, and, since bad faith is never presumed, but, on the contrary, good faith is presumed, the inference is that he understood the act as he thus interpreted it; that is to say, as giving the lake itself, the natural boundary, as the boundary of the land sold to him, and not the traverse line, a line existing only in the reports and plats of the surveys. At any rate, it is safer to adopt that view, which accords with the order of things established so many years ago, in which all parties seem to have acquiesced.

Judgment affirmed.